The STATE, at the instance of A. ADAMS <i>vs.</i> G. BUZINE.

A judge, or justice of the peace. has power to order the arrest of a fugitive from justice from another State, before demand.

A regular demand under the act of Congress, and warrant of the governor to surrender a fugitive, is conclusive; and the court, or judge, cannot on habeas corpus inquire further into the offence charged.

Habeas corpus before Chief Justice Booth.

The defendant made return that the petitioner was in his custody as

high constable and keeper of the common jail of the city of Wilmington, by virtue of a commitment under the *hand* of the mayor: that he was arrested on a warrant issued by the mayor, upon the oath of Henry Baker, of Centre county, Pennsylvania, setting forth that the petitioner, about the 25th of August, 1845, committed a larceny at the county and State aforesaid, of the goods of one Thomas Fitch, of the value of $2,000.

The case was heard on the 22d of July, 1846, and was argued by *Mr. Bayard* for the petitioner, and *Mr. Huffington,* contra. The points made will appear from the following opinion of the chief justice.

Booth, *Chief Justice.*—The motion to discharge the petitioner, has been argued by his counsel, on three grounds; 1st. That as the common law considers crimes as local, and cognizable only in the State or country where they are committed, a person who has been guilty of a crime in a foreign State, and seeks shelter in another country, cannot be arrested and imprisoned in the latter, and delivered up as a fugitive from justice, unless by virtue of some treaty or compact on the subject; and then only, under a requisition, made in the manner which such treaty prescribes. That prior to the Constitution of the United States, this principle was applicable to the several States; because being separate and independent States, they were then to be viewed as foreign to each other: that since the adoption of the Constitution of the United States, an offender, who has perpetrated a crime in one State, and takes refuge in another, cannot be arrested and imprisoned in the latter, to be delivered to the civil authority of the former, except by virtue of the second section of the fourth article, and the act of Congress, passed the 12th of February, 1793, for the purpose of carrying into effect the provision of the constitution: and, therefore, that no magistrate within this State, can issue process against a person who has committed a crime in another State, and seeks refuge here, until a demand has been made by the executive of the former, upon the executive of this State, and a warrant issued by the latter, to arrest and secure the criminal.

2d. The second ground relied upon is, that the warrant of commitment in this case, not being under seal, is insufficient and void.

3d. The third is, that admitting all the facts deposed to by the witnesses, and appearing from the written evidence, to be true, they do not constitute a larceny.

1st. Many eminent jurists maintain the doctrine, that by the law of nations, it is the duty of every State, to deny an asylum to the

perpetrators of atrocious crimes committed in other countries, against the rights of private property and personal security : and that it is a further duty, to surrender the fugitive to the sovereign State where the crime was committed.  This doctrine is ably supported by Chancellor Kent, in the case of Daniel Washburn, 4 *Johns. Ch. Rep.* 108.  But the weight of legal decisions, and the uniform course and practice of the government of the United States are opposed to it.  So, also, is the opinion of a majority of the judges of the Supreme Court of the United States, in the case of Holmes *vs.* Jennison, 14 *Peters* 540, although the point was not directly decided, the writ of error having been dismissed, as the court were equally divided on the question of jurisdiction.  The law may be considered as settled in the United States, that the right to demand and the duty to surrender a criminal, who flies from a foreign country, exists only by virtue of treaty stipulations; and in such case, that the power of surrendering, must be exercised by the President of the United States.  But where separate States or Territories are parts of the same empire, under one common sovereign or government; a person who commits a crime in one part, and seeks shelter in another, may be arrested in the latter, and sent for trial where the offence was committed; or may be detained in prison for a reasonable time, to allow an application to be made, to deliver him up to the proper authority, for the same purpose.  This is a principle of the common law, founded in the common welfare and safety of society.  Hence, a person who commits a felony in Ireland, and flies to England or Scotland, may be arrested and imprisoned until he can be sent to Ireland for trial. (*Col. Lundy's case*, 2 *Ventris* 314 ; *Rex* vs. *Kimberly*, 2 *Strange* 848.) So too, a person may be arrested in England and sent to Calcutta, to be tried for an offence committed there.  (*East India Company* vs. *Campbell*, 1 *Vesey* 246.)   So also, prior to the American revolution, when the United States were colonies, and composed part of the British Empire, a criminal, who fled from one colony, found no pretection in another.  He was arrested whenever found, and sent for trial, to the place where the offence was committed.  (*Commonwealth* vs. *Deacon, per. Tilghman C. J.*, 10 *Serg. & Rawle* 123.) This principle of the common law certainly was not abrogated by the colonies severing the ties which bound them to the mother country, and uniting themselves under an independent national government.  It was not, therefore, derived from the constitution, but existed independently of it.  The second section of the fourth article of that instrument was intended to make the arrest and surrender of

the criminal, on demand of the executive authority of the State from which he fled, an imperative duty; and not to depend on the discretionary exercise of a right or power. This duty, by the first section of the act of Congress of 1793, is imposed on the executive authority of the State to which the criminal has fled. To enable the executive to perform this duty it is necessary that magistrates should have the power to arrest and commit the fugitive, before, as well as after a demand has been made. If prior to the adoption of the constitution, he found no protection in the State to which he fled; since then, no reason exists why an asylum should be afforded to him, until a demand is made on the executive of the State where he seeks refuge, and a warrant issues to arrest and secure him. The exercise of the power is essential to carry into effect the provision of the constitution; otherwise an immunity may be afforded to the most atrocious criminals. If a felon notoriously guilty of a murder, can, by escaping into another State, set the law at defiance, until a demand is regularly made on the executive, and a warrant is. issued for his arrest, the object of the constitution may be defeated, and the act of Congress rendered nugatory. By th etime a requisition is obtained, and a warrant granted, in due form, the offender may fly to another State; where he again finds a sanctuary, until the same formalities are repeated. He may thus escape from State to State, exempted by his own vigilance, or that of his friends, from arrest and punishment. In the case before cited, (*Com.* vs. *Deacon*, 10 *Serg. & Rawle*,) Chief Justice Tilghman says, "that when the executive has been in the habit of delivering up fugitives, or is obliged by treaty to do so, the magistrates may issue warrants of arrest of their own accord, on proper evidence, in order the more effectually to accomplish the intent of the government, by preventing the escape of the criminal. On this principle we arrest offenders, who have fled from one of the United States to another, even before demand has been made by the executive of the State from which the fugitive had fled." It is the constant practice in several States to do so; and is required by the principles of justice for the safety of the community. My opinion, therefore, is, that any judge or justice of the peace in this State, or the mayor of the city of Wilmington, upon probable cause supported by oath or affirmation, has the power to issue a warrant to arrest and bring before him, a party suspected of having committed a crime in another State, before a demand has been made by the executive of such State; and that after examination, upon such proof, or probability, of the party having committed the offence, as would

be sufficient to put him upon trial; it is the duty of the magistrate to commit him to prison, for such reasonable time, as will allow notice to be given the executive authority of the State, where the offence was committed, and a demand to be made, pursuant to the act of Congress, for the surrender of the fugitive.

2d. The second ground relied on by the petitioner's counsel, is the insufficiency of the warrant of commitment. The law requires every final commitment to be in writing, and under the hand and seal of the magistrate who makes it. It must show his authority; the time and place of making it; and must be directed to the keeper of the prison. The present warrant of commitment is defective; because it is not under the seal of the mayor. But in my opinion, the petitioner is not entitled to his discharge, on account of the insufficiency of the warrant; provided, the facts disclosed by the evidence, afforded a reasonable presumption that he is guilty of the offence imputed to him, or such probability as would be sufficient to put him upon his trial. If such were the case, although I should discharge him from imprisonment under the warrant of the mayor, I should consider it my duty to order him to be immediately committed to the public gaol of New Castle county, for a reasonable time to give notice, and await the demand of the executive authority of Pennsylvania. If no demand should be made within such reasonable time, it would become my further duty, to make a final order for his discharge.

3d. As to the third ground. Admitting all the facts deposed to by the witnesses, and shown by the letters and other documents between the parties, to be strictly true, they do not constitute a larceny. Fitch was the owner of a clothing establishment at Bellefonte, Centre county, in the State of Pennsylvania, but resided at Schuylkill Haven, in Schuylkill county. Under articles of agreement between him and Adams, fairly made, without any fraud or deception on either side, possession of the store and goods was delivered to the latter, who had the entire management and control of the whole business. He hired and paid the hands; cut out garments; sold readymade clothing; received the amount of sales; kept the books of accounts; and was to settle with Fitch for the proceeds of the business, after deducting a certain per centage as a compensation. Adams embezzled goods and money to a large amount, without anything ever having been done to determine the privity of contract under which the possession had been delivered to him. His conduct is a gross breach of trust, involving as much moral guilt as theft; but does not amount to a larceny. It has not been shown to constitute

a criminal offence, punishable under any statute of Pennsylvania. The only remedy of Fitch, is by a civil suit. It is, therefore, ordered, that the said Alexander Adams be discharged from his imprisonment under the commitment of the mayor of the city of Wilmington.

After the discharge of said Alexander Adams upon the foregoing writ of habeas corpus, he was taken by the sheriff of New Castle county, upon a capias at the suit of Thomas Fitch, and held in custody for want of bail. A rule to show cause of bail was granted by Chief Justice Booth, on behalf of Adams; and at the hearing of the rule, on the 28th of July, 1846, no affidavit being produced, he was discharged on filing common bail. He was immediately afterwards arrested and delivered into the custody of Edmund Schlemn, a police officer of the city of Philadelphia. On the same day, upon the petition of Adams to the chief justice, a writ of habeas corpus was awarded, directed to the said Schlemn, returnable forthwith. A return was made, containing a copy of a requisition made by Francis R. Shunk, governor of the State of Pennsylvania, upon the governor of the State of Delaware, setting forth, that said Alexander Adams was charged on the oath of said Thomas Fitch, with having committed the crime of larceny at Centre county, in the State of Pennsylvania, in August, 1845; that he had fled from justice and had taken refuge in the State of Delaware; and demanding that he should be arrested and delivered up to the said Schlemn, the agent of the State of Pennsylvania, duly appointed and commissioned to receive and convey the said Adams to Pennsylvania, to be dealt with, according to law. Annexed to the requisition was a copy of the affidavit of Fitch, made before a magistrate in Pennsylvania, and certified, although not formally, as authentic, by the governor of that State, and charging Adams in due form of law, with having committed a larceny at the town of Bellefonte, in Centre county, and State of Pennsylvania, in feloniously stealing, taking and carrying away, in August A. D., 1845, sundry cloths and garments of the value of two thousand dollars and upwards, of the goods and chattels of said Thomas Fitch. The return also set forth a copy of the warrant of the governor of the State of Delaware, issued in the name of the State, to arrest and deliver the said Adams, into the custody of Schlemn, as the agent of the State of Pennsylvania. The return also set forth a copy of the appointment of Schlemn under the great seal of Pennsylvania. The originals of the two last mentioned docu-

ments, and copies of the others, certified in due form of law, were produced at the hearing of the cause.

Mr. *James A. Bayard,* for the prisoner, moved for his discharge, principally on the ground that at the hearing of the preceding habeas corpus, it had been clearly shown that he was not guilty of a larceny, but simply of a breach of trust; and that it manifestly appears, that the present charge is founded on the same transaction. The motion was opposed by *Mr. William Huffington,* counsel for Fitch, the prosecutor, on the ground, that no court or judge in this State, has power to discharge a person guilty of, or charged with, an offence committed in another State, and who, by the Constitution of the United States, ought to be delivered up to the executive of such State: or to discharge any person imprisoned by the authority of the United States. (*Habeas Corpus Act, sec. 4, Dig.* 295.) He contended that Adams was imprisoned by the authority of the United States; and cited the opinion of Pope, United States district judge in Illinois, in the case of Joseph Smith, the mormon prophet, 6 *Law Reporter* 58.

BOOTH, *Chief Justice.*—Every person in this State who is restrained of his liberty under any color or pretence whatever, either for a civil or criminal cause, and apprehends, or is advised, that his imprisonment is illegal, is entitled, as a matter of right, to the writ of habeas corpus; unless his petition clearly and distinctly shows, that he is legally detained for treason or felony, plainly and fully set forth in the warrant of commitment; or detained under the judgment or process thereon, of a court of competent civil or criminal jurisdiction; or that he is legally imprisoned by the authority of the United States, or detained for such other legal and sufficient cause, as satisfies the court or judge, that no relief could be granted to the petitioner upon the return of the writ. It is in the nature of a writ of error to examine into the legality of the commitment; and for that purpose, to bring up the body of the prisoner with the cause of his detention. Suggestions or exceptions against the return may be filed, for the purpose of ascertaining material facts, to enable the court or judge to determine whether the party ought to be bailed, remanded, or discharged. In cases of imprisonment under warrants from our magistrates, for offences committed within this State; or for offences perpetrated in another State, and the accused is committed to await the demand of the executive authority of such State, an inquiry is made into the circumstances of the case, to ascertain the material fact, whether there is such proof, or reasonable presumption of guilt, as would be sufficient to put the party on trial. But if the return

alledges, that the prisoner was committed and is detained by virtue of the judgment, and process thereon, of a court of competent jurisdiction, the existence of such judgment and process, is the material fact to be ascertained. When ascertained, it is a sufficient legal cause for the prisoner's detention, and precludes all further inquiry. The court or judge awarding the habeas corpus, cannot examine into the matters on which the judgment was rendered, but must remand the prisoner. So in like manner, if the return to the habeas corpus sets forth, that the party is a fugitive from justice, that he was demanded as such, and was arrested and committed for the purpose of being surrendered; the only inquiry is, whether the provisions of the act of Congress of 1793 have been complied with. If that fact is shown by the return, and by the warrant of the executive authority under which the fugitive has been arrested, it constitutes a just and legal cause for his imprisonment and detention. The right and power under the Constitution of the United States, and the first section of the act of Congress of 1793, to demand, arrest, commit, and surrender fugitives from justice, are exclusively vested in and confided to, the executive authority of the State from which the fugitive has escaped, and that of the State where he has taken refuge. To authorize the latter to take cognizance of the case, and to perform the duty imposed upon him, the act of Congress prescribes 1st. That the demand shall be made by the executive of the State from which the fugitive has fled. 2d. That a copy of an indictment found, or of an affidavit made before a magistrate, charging the person demanded with having committed a crime, shall be produced with the demand. 3d. That such copy of the indictment or affidavit shall be certified as authentic by the executive of the State from whence the person so charged, fled. These matters are entrusted to the judgment of the executive upon whom the demand is made; and if his mind is fully satisfied in regard to them, the act of Congress makes it his imperative duty to cause the fugitive to be arrested, and delivered up to the regularly constituted agent of the State from which he fled. The warrant of the executive under the great seal of the State, reciting the facts necessary, under the act of Congress, to give him jurisdiction of the case, would in my opinion, at the hearing of the habeas corpus, be conclusive evidence of the existence of those facts, of his judgment in relation to them, and of a compliance with the Constitution of the United States and the act of Congress. No investigation therefore in such a case, can be made beyond the warrant of the executive, and no examination into the

facts and circumstances of the alledged offence with which the party stands charged. The case would not be within the operation of the habeas corpus act of this State, even were it not expressly excepted by the fourth section. (*Dig.* 295.)

In the present case, the return fully sets forth copies of all the documents transmitted by the governor of Pennsylvania to the executive of this State, with the warrant of the latter, and the appointment of Schlemn as the agent of the State of Pennsylvania, to receive the petitioner, as a fugitive from justice, and to carry him to that State. It appears that all the requisites of the act of Congress have been complied with. No suggestions or exceptions have been made to the return. It is, therefore, admitted to be true. And, although my belief is that the alledged offence with which the petitioner is charged is the same which, upon the examination of witnesses at the hearing of the former habeas corpus, clearly appeared to be a breach of trust, and not a larceny, he must be remanded, because the return in this case, is conclusive. When taken to Pennsylvania, he can obtain relief, if the circumstances of his case entitle him to it, by suing out the writ of habeas corpus. It is therefore ordered, that the petitioner be remanded to the custody of Edmund Schlemn, to be taked by him to Pennsylvania, there to be dealt with according to law.

Adams was taken to Pennsylvania, and put in prison at Bellefonte. He there obtained the writ of habeas corpus; and, after an examination into the facts of the case, he was discharged, on the ground that they did not constitute a larceny, but amounted merely to a breach of trust.